# IN THE SUPREME COURT OF IOWA

No. 16–2141

Filed April 13, 2018

**IN RE THE DETENTION OF RONALD TRIPP,**

**RONALD TRIPP,**

    Appellant.

---

Appeal from the Iowa District Court for Fayette County, John Bauercamper, Judge.

A person committed under the Sexually Violent Predator Act appeals his commitment. **REVERSED AND REMANDED.**

Jill Eimermann, Assistant Public Defender, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller and Keisha F. Cretsinger, Assistant Attorneys General, for appellee.

**APPEL, Justice.**

As in *State v. Wygle*, ___ N.W.2d ___ (Iowa 2018), this appeal involves the relationship between Iowa Code chapter 229A (2016), which provides for the civil commitment of sexually violent predators, and Iowa Code chapter 903B, which imposes a special sentence on persons convicted of certain sexual offenses.

Ronald Tripp claims in this case that he was unlawfully committed as a sexually violent predator (SVP). Tripp asserts the State failed to prove either that he was presently confined for a sexually violent offense under Iowa Code section 229A.4(1) or that he committed a recent overt act under Iowa Code section 229A.4(2). As a result, Tripp asserts, the district court erred in refusing to dismiss the SVP commitment proceeding against him. In the alternative, Tripp claims the district court improperly allowed an expert witness to be a conduit for the admission of hearsay evidence at the SVP hearing.

For the reasons expressed below, we reverse the district court. Because we hold that the district court erred in not granting the motion to dismiss, we do not address the hearsay issue with respect to the expert witness testimony.

**I. Background Facts and Proceedings.**

**A. Original Conviction for a Sexually Violent Offense, Revocation of Probation, and Discharge of Prison Sentence.** In 2010, Tripp was convicted of indecent contact with a child, a sexually violent offense under Iowa Code section 229A.2(10)(*a*) (2009). The district court placed Tripp on probation. The district court also imposed a ten-year special sentence pursuant to Iowa Code section 903B.2.

In 2011, Tripp was charged with failing to abide by the requirements of the sex offender registry under Iowa Code section

692A.113 (2011) and for harassment under Iowa Code section 708.7(1)(*b*). Ultimately, Tripp pled guilty to three aggravated misdemeanors for sex offender exclusion zone violations and three simple misdemeanors for harassment. Tripp's probation was revoked and he was incarcerated. Tripp discharged his sentence and was released from prison in June 2012.

Upon the completion of his sentence for his underlying offense, Tripp began serving his ten-year special sentence under Iowa Code section 903B.2. Under Iowa Code section 903B.2, a person subject to a special sentence is placed on the corrections continuum under Iowa Code chapter 901B and is subject to the procedures set out in Iowa Code chapters 901B, 905, 906, and 908 and the rules adopted under these provisions for persons on parole. *Id.* § 903B.2.

**B. Revocation of Release Under Iowa Code Section 903B.2.** In May of 2013, Tripp was charged with assault with attempt to commit sexual abuse. The State dismissed the criminal charge but pursued revocation of Tripp's release under Iowa Code section 903B.2.

On October 11, 2013, a hearing was held before an administrative parole judge. After receiving evidence, the administrative parole judge revoked his release. In a brief order, the administrative parole judge noted that the burden of proof born by the state in a parole revocation hearing was a preponderance of evidence. The administrative parole judge came to the conclusion that facts stated in a department of corrections violation report were correct and adopted them wholesale as findings of fact. As a result, the administrative parole judge revoked Tripp's release and ordered Tripp to serve a two-year sentence as provided in Iowa Code section 903B.2 (2013).

### C. Subsequent SVP Proceedings.

1. *Two-pronged petition.* Before Tripp was discharged from his two year incarceration under Iowa Code section 903B.2, the State filed a petition seeking civil commitment of Tripp as an SVP under Iowa Code chapter 229A. The State alleged Tripp was presently confined at the time of the filing of the petition under Iowa Code section 229A.4(1). The State also alleged that Tripp had committed a recent overt act under Iowa Code section 229A.4(2). A district court judge found probable cause and the matter was scheduled for trial.

2. *Pretrial motions.* Prior to his trial, Tripp filed a motion to dismiss and a motion in limine. The district court held a hearing on the motions prior to trial.

At the pretrial hearing the day of trial, Tripp argued that the SVP petition must be dismissed. Tripp noted the State must prove the elements of either of the two SVP tracks "beyond a reasonable doubt." He focused his fire on the allegation in the State's petition that Tripp was presently confined for purposes of Iowa Code section 229A.4(1). Tripp suggested the State had problems with its criminal prosecution and proceeded with "the easier route" of a parole revocation where the rules of evidence are relaxed and the burden of proof is lower. He argued that the record developed at the parole hearing included only the deposition of the alleged victim, the deposition of a police officer, the victim's impact statement, and a letter with the testimony of Tripp denying the charges. Thus, while Tripp conceded he was confined at the time of the SVP hearing, it was not because of the conviction for his 2010 offense or the offense charged in 2013, which was ultimately dismissed. Instead, according to Tripp, he was being confined because of a violation of his special sentence under Iowa Code chapter 903B.

According to Tripp, "[a] special sentence is not the same as being on probation or parole." Tripp noted that for a violation of a special sentence, regardless of severity, the penalty is the same, namely a two-year incarceration for a first violation and a five-year incarceration for subsequent violations. Tripp asserted the two-year/five-year regime established by Iowa Code chapter 903B was "arbitrary" and "fundamentally different" than a return to prison to serve all or part of an underlying criminal sentence.

The State responded that under existing caselaw, a person convicted of a qualifying offense is still being punished for that offense by a special sentence under Iowa Code chapter 903B. *See State v. Harkins*, 786 N.W.2d 498, 505 (Iowa Ct. App. 2009). The State advanced what amounted to a cause-in-fact argument—Tripp would not have been subject to Iowa Code chapter 903B special sentence but for his conviction of a sex offense in 2010. As a result, Tripp was presently confined as a result of his original 2010 offense. The State asserted that authorities from other jurisdictions supported its view that a person who is on parole and then returned to prison may be subject to SVP commitment. *See People v. Felix*, 87 Cal. Rptr. 3d 482, 490 (Ct. App. 2008); *Barber v. State*, 988 So. 2d 1170, 1178 (Fla. Dist. Ct. App. 2008); *In re Commitment of Bush*, 699 N.W.2d 80, 92 (Wis. 2005).

Further, the State argued, even if Tripp was not presently confined, the SVP petition could be supported under the overt-act prong of the statute. With respect to the overt-act theory, at the hearing on the motion to dismiss the State offered into evidence a parole violation report, Exhibit 5; documentation of the dismissed case that was submitted as evidence in the parole violation hearing, Exhibit 7; and the parole revocation order, Exhibit 8. Tripp did not object to the offer of

Exhibits 5 and 8, but objected to Exhibit 7 as containing impermissible hearsay. The State responded, in part, by offering two discs, Exhibit 6A and 6B, which contained testimony presented at the parole hearing. The district court accepted the exhibits for purposes of the motion in limine, but with the clear admonition that they must be reoffered for any purpose at trial.

The district court declined to rule on the motion to dismiss, taking the motion under advisement. The district court next took up the motion in limine.

Tripp argued that under our decision in *In re Detention of Stenzel*, 827 N.W.2d 690 (Iowa 2013), certain types of evidence, such as testifying from police reports or testifying from minutes of testimony, are not admissible. Thus, Tripp argued, this type of evidence from the 2013 charges that were ultimately dismissed could not be admitted. While Tripp pled guilty to three simple misdemeanor offenses in 2011, he argued they were not sexually violent offenses and any hearsay related to them should be excluded under *Stenzel*, 827 N.W.2d at 710.

Tripp also sought to prevent the State's experts from using police generated hearsay in forming their opinions. To the extent any such information might be admissible under Iowa Rule of Evidence 5.703, Tripp noted that rule 5.403 requiring the exclusion of prejudicial, confusing, misleading, delaying, time wasting, or needlessly cumulative evidence can override any such admission.

While an administrative parole judge found that Tripp had violated his special parole, Tripp argued, administrative agency findings were not admissible under *State v. Huston*, 825 N.W.2d 531, 539 (Iowa 2013), and *Goodwin v. State*, 585 N.W.2d 749, 753 (Iowa Ct. App. 1998). Tripp

again asserted that the administrative parole judge applied a lower standard of proof than is required under Iowa Code chapter 229A.

The State responded by characterizing *Stenzel* as standing only for the proposition that it cannot create its own evidence and that, as a result, documents prepared by the prosecution, such as charges or minutes of testimony, should not be admitted when the charges have been dismissed. But, the State argued, the reach of *Stenzel* was limited in several important respects.

First, the State suggested, the details of the offenses may be admitted from other sources, such as admissions of the defendant. Specifically, the State argued that Tripp had admitted the allegations in the harassment misdemeanors. As a result of his guilty plea, the underlying facts, including offering minors money to undress and jump into the river, were admissible. The State offered the complaint, guilty pleas, and the minutes of evidence as Exhibit 2, the report of violation as Exhibit 3, and an admission of probation violation by Tripp as Exhibit 4. Tripp objected to Exhibits 2 and 3 as violations of *Stenzel*. The district court admitted the exhibits for the limited purpose of considering the motion in limine.

Second, the State noted that in this case, while not convicted criminally of the crime charged in 2013, an administrative parole judge determined that Tripp committed the offense and thereby violated his parole. The State argued that the administrative determination "essentially operates as [if] it [were] a conviction." As a result, the State asserted, it could offer the details of that offense in order to present its case that Tripp qualified as a sexually violent predator.

Third, the State asserted that experts consider parole revocation an "index offense" which then determines the scoring and assessment of

other prior offenses and allegations. As a result, experts should be able to at least reference the underlying charges that led to the revocation of parole.

Fourth, the State asserted that information about "other children in the trailer park" in police reports related to Tripp's 2010 conviction could be relied upon by the State's experts. The presence of other children, according to the State, provided a basis for their expert to determine that Tripp met a particular dynamic risk factor of sexual preoccupation. The State emphasized that *Stenzel* was not designed to change how various instruments were used by experts to indicate future risk.

The district court reserved ruling on the motion in limine and the matter proceeded to trial.

3. *Evidentiary issues at trial.* At trial, the State called Tripp as its first witness. In its interrogation of Tripp, the State sought admission of the three complaints related to the 2011 harassment charges contained in Exhibit 2. The complaints alleged that on three occasions Tripp offered three minor girls "$10 each to strip nude and jump in the water" at a bridge over Otter Creek. Tripp objected to the admission of the charging documents based on *Stenzel*. The district court admitted the exhibit subject to the objection.

The State also sought to admit through Tripp Exhibit 3, a report of violation prepared by the department of corrections related to the 2011 harassment charges. The report provides additional details beyond those contained in the harassment complaints. Among other things, the report indicated "[the State had] statements from 6 different girls (ranging in age from 13 to 14) who were approached [by] Tripp," that Tripp "made inappropriate comments" before offering them money to take off their

clothes and jump into the water, and "Tripp had also shown them his underwear and asked for a hug."

The report further provides information about the 2011 charges against Tripp for violating Iowa Code section 692A.113 related to exclusion zones for sex offenders. Specifically, the report alleged that Tripp was seen getting his phone out and attempting to take pictures of four or five kids selling Kool-Aid from a stand. Tripp objected to admission of Exhibit 3 under *Stenzel* and as hearsay. The district court admitted the exhibit subject to the objections. Tripp did not object, however, to Exhibit 4, a document showing that Tripp pled guilty to the harassment and exclusionary zone charges in 2011.

Tripp also offered testimony about the 2011 events. Tripp admitted being at the Otter Creek location on the three dates charged in the harassment complaints. He admitted there were minors at the location and that his interaction with them involved skinny dipping. Tripp stated that one of the boys at the location hollered at a girl asking her to jump naked in the water and that Tripp simply repeated what the boy had said when asked by the girl. He further admitted that he showed the minors his underwear in response to requests that he jump into the water. Tripp claimed he exposed his underwear to demonstrate that he was not wearing swimming trunks underneath his clothing.

The State also explored with Tripp the circumstances of Tripp's revocation of parole under Iowa Code chapter 903B in 2013. The State offered into evidence the department of corrections violation report, Exhibit 5. The report made reference to an "attached complaint" but no such complaint was attached to the exhibit. The complaint, original and amended trial informations, and documents related to the dismissal of the charges, however, were all assembled in Exhibit 7, which the State

offered into evidence. The State also offered the findings of fact and conclusions of law of the administrative parole judge as Exhibit 8. Tripp objected only to Exhibit 7 on *Stenzel* and hearsay grounds. The district court admitted the evidence subject to the objection.

The State next called an expert witness, Anna Salter, to testify. Salter described two diagnostic tests, the Static-99R and the Static-2002R. Salter testified these tests require the examiner to consider a number of factors that affect an individual's likelihood to reoffend, including age, number of previous offenses, and various victim characteristics. Salter explained the examiner assigns a numerical value to each factor based on their interview with the individual and documentary evidence. The sum of these numbers is then used to calculate the individual's risk of reoffending based on actuarial data.

The State asked Salter to explain her scoring of Tripp on the factors in each diagnostic test. Salter testified that she used Tripp's 2013 revocation as an index offense which influences how various scores are calculated. At this point, she did not describe the underlying facts of the 2013 parole revocation.

Tripp began to object, however, when the State sought to establish the basis of some of Salter's scoring. When the State asked why Salter assigned a point against Tripp for having a five-year-old male victim, Salter testified that she relied on police reports from May 2010 regarding a five-year-old victim. At this point, Tripp engaged in voir dire with the witness. Tripp established that Salter was relying upon a report containing facts about which she had no personal knowledge. Tripp recognized that the court was reserving objections, but emphasized that the court should disallow testimony about the matter as it was "in no

way reliable, nor is it credible." The district court admitted the evidence subject to the objection.

Salter then continued her testimony by citing the results of a forensic interview of the child conducted by St. Luke's Hospital Child Protection Center. Tripp objected on grounds of *Stenzel* and "credibility." The district court admitted the testimony subject to the objection. When Salter sought to describe the results of the forensic interview of the mother, Tripp again objected on the ground that even if Salter could utilize the interview for scoring purposes, that did not necessitate a reading into the record of the details of the allegations. The district court overruled the objection. Salter then read a description of the mother's statements indicating that when Tripp rode up to her and the boy, the boy blurted out to her that "I suck Ron's pee pee and he sucks mine."

Later, Salter offered testimony about "dynamic factors" that some authorities deem appropriate to consider in SVP cases. According to Salter, one of the dynamic factors is sexual preoccupation. Salter again referenced the 2010 police reports. Tripp's attorney objected on grounds of "hearsay, *Stenzel,* prejudicial more than probative." The district court again overruled the objection. Salter then testified

> [t]here were multiple reports of sexual offending that came out of that [police report]. They only prosecuted one, but there was also a report from a five-year-old, there was [a] report from a 15-year-old, there were multiple reports that he would get kids in his trailer and offend against them.

4. *District court ruling.* After the bench trial, the district court issued findings of fact and conclusions of law adverse to Tripp. With respect to the pending motion to dismiss, the district court overruled it, finding that Tripp was presently confined as a result of violation of his

Iowa Code chapter 903B special sentence "which was part of his sentence for the indecent contact crime."

The court also addressed the motion in limine. The district court concluded that "it is acceptable under certain circumstances for an expert witness to rely on facts not in evidence or crimes not charged or resulting in conviction, based upon the facts of the case." As a result, the court denied the "blanket motion in limine." The district court, however, did not rule on the specific objections interposed by Tripp to the admission of specific exhibits and testimony.

The district court then turned to the merits of the case. In its findings of fact the district court canvased the evidence from Tripp's parole revocation hearing in 2013. According to the district court,

> Evidence presented at the parole revocation hearing disclosed that Tripp fondled an adult female acquaintance who was traveling with him in his vehicle when he offered to give her a ride. Trip[p] touched her breast and thighs, and tried to touch her vagina despite multiple attempts to block the assault. His parole was revoked and he was returned to prison.

The district court concluded that Tripp's risk of reoffending was high due to the parole violation, sexual preoccupation, and "sexually deviant life style in the trailer park," among other factors. The district court found that the State had shown beyond a reasonable doubt that Tripp had a greater than fifty percent chance of reoffending. As a result, the district court granted the State's SVP petition and ordered Tripp committed.

Tripp appealed. On appeal, he launches a two-pronged attack on his civil commitment as an SVP. First, Tripp asserts he was not presently confined when serving a sentence for violation of Iowa Code chapter 903B. As a result, Tripp argues, he cannot be civilly committed

under Iowa Code section 229A.4(1). Second, Tripp asserts the district court erred by allowing hearsay evidence of prior alleged sex offenses that Tripp denied having committed and that were ultimately dismissed.

## II. Standard of Review.

The district court's ruling on a motion to dismiss and its construction of Iowa Code chapter 229A and 903B are reviewed for errors at law. *Stenzel*, 827 N.W.2d at 697; *Waters v. Iowa Dist. Ct.*, 783 N.W.2d 487, 488 (Iowa 2010).

With respect to hearsay challenges, the standard of review is generally for errors at law. *Stenzel*, 827 N.W.2d at 697. When experts rely on hearsay testimony, however, we have applied an abuse of discretion standard. *Id.*; *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001).

## III. Motion to Dismiss.

**A. Interplay Between "Presently Confined" Under Iowa Code Section 229A.4(1) and Revocation of Release Under Iowa Code Section 903B.2.** As in *Wygle*, this case raises a legal question regarding the interplay between Iowa Code section 229A.4(1) and the revocation of release under Iowa Code section 903B.2. ___ N.W.2d at ___. In *Wygle*, we held the "presently confined" provision of Iowa Code section 229A.4(1) does not apply to a person who has been discharged from the sentence underlying the sexually violent offense that resulted in his incarceration. *Id.* at ___. Tripp is thus not "presently confined" under Iowa Code section 229A.4(1) by virtue of being subject to a chapter 903B special sentence.

**B. Overt-Act Alternative Under Iowa Code Section 229A.4(2).** The State did, in the alternative, seek commitment under the recent-overt-act prong of Iowa Code section 229A.4(2). The State asserts there was sufficient evidence to find an overt act in the 2013 charges, and as a

result, even if Tripp was not presently confined under Iowa Code section 229A.4(1), the State met its burden on showing a recent overt act under Iowa Code section 229A.4(2).

There are several problems with the State's theory. First, the district court made no finding of a recent overt act in its ruling, and thus, even if there is substantial evidence in the record to support an overt act, the case would need to be remanded for further fact finding by the district court.

In any event, whether there was a recent overt act under Iowa Code section 229A.4(2) sufficient to support the SVP petition is a question of fact. It must be proved beyond a reasonable doubt by admissible evidence. *See* Iowa Code §§ 229A.7(4), .5 (2016).

At trial, the State presented no in-court testimony on the alleged events in 2013. Instead, the State offered several exhibits related to these events. In order to resolve the question of whether the State offered sufficient evidence to survive dismissal for lack of substantial evidence on a "recent overt act," we must examine the contents of each exhibit and determine whether it was properly admitted into evidence. In examining the evidence at trial, we must take into account the admonition of the district court at the pretrial hearing on the motion to dismiss and the motion in limine. At the hearing, the district court clearly stated in response to the State's offer of exhibits that

> the offered exhibits, including 6A and 6B, are admitted for the limited purpose of the motion in limine. If counsel for the State wants to use them for any other purpose later in the proceeding, they will need to be offered again.

At trial on the merits, the State did not offer Exhibits 6A and 6B— two audio discs of the proceedings before the administrative parole judge. The State did offer Exhibit 5—a violation report related to the 2013

events, Exhibit 7—the criminal complaint, information, amended information, and documents related to dismissal of the 2013 criminal charge, and Exhibit 8—the findings of fact and conclusions of law of the administrative parole judge. At trial, Tripp did not object to the admission of Exhibits 5 and 8, but continued to object to Exhibit 7 on "hearsay and *Stenzel*" grounds. The district court admitted Exhibits 5 and 8 into the trial record and admitted Exhibit 7 subject to the objections.

We first consider whether Exhibit 7, which includes the criminal complaint that details the specifics of the allegations in 2013, was admissible on the question of whether the State showed a recent overt act. We note that the question of whether Exhibit 7 may be used as substantive evidence in the proceeding to prove a recent overt act is a different question from whether the evidence may be used by an expert in forming an opinion. Hearsay facts and data may, under certain circumstances, be utilized by an expert in forming an opinion under Iowa Rule of Evidence 5.703. Further, under appropriate circumstances, such evidence may be disclosed to the jury to show the basis for the expert's opinion. *See Carter v. Wiese Corp.*, 360 N.W.2d 122, 133 (Iowa Ct. App. 1984). In the context of an SVP litigation, determining which circumstances are appropriate is a delicate question. *See, e.g., In re Care & Treatment of Colt*, 211 P.3d 797, 804 (Kan. 2009) (holding expert testimony based on hearsay evidence inadmissible); *In re A.M.*, 797 N.W.2d 233, 261–62 (Neb. 2011) (holding hearsay may be utilized by expert under certain circumstances but not disclosed to the factfinder). But even if the hearsay evidence may be used by an expert to support an opinion and, under certain circumstances, might even be disclosed to the factfinder to show the basis of the expert's opinion, any hearsay evidence

that is admitted under rule 5.703 is not admissible for proving the fact of the matter asserted. *See Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 182 (Iowa 2004) (holding hearsay used by expert inadmissible for truth of the matter asserted); *see also People v. Anderson*, 495 N.E.2d 485, 489 (Ill. 1986) (emphasizing hearsay used by experts for limited purpose of explaining the basis of expert's testimony inadmissible for truth of matter asserted); *People v. Swanson*, 780 N.E.2d 342, 350 (Ill. App. Ct. 2002) (finding expert reports of others relied upon by trial expert admissible to show basis of trial expert's opinion, but not substantively admissible); *State v. Wilkes*, 908 N.Y.S.2d 495, 497 (App. Div. 2010) (noting it is settled law that "hearsay testimony given by experts is admissible for the limited purpose of informing the jury of the basis for the experts['] opinion[s]" (alterations in original) (quoting *People v. Campbell*, 602 N.Y.S.2d 282, 284 (App. Div. 1993))).

As a result, regardless of whether the hearsay in Exhibit 7 could be considered facts or data that may be used by an expert in forming an expert opinion, it is not admissible on the question of whether the State has shown the statutory requirement of a recent overt act. *See* Iowa Code § 229A.4(2). The only admissible evidence offered by the State at trial to prove a recent overt act arising from events in 2013 was the conclusory report prepared by the department of corrections, Exhibit 5, and the findings of fact and conclusions of law of the administrative parole judge, Exhibit 8.

Even though Exhibit 7 was inadmissible to show a recent overt act, there is a question whether it should nevertheless be considered for purposes of determining whether the State offered sufficient evidence to support the overt-act theory. In *State v. Dullard*, we held that it was an error for the court of appeals to exclude consideration of an erroneously

admitted handwritten note from its sufficiency-of-evidence review. 668 N.W.2d 585, 597 (Iowa 2003). We explained that the admissible evidence should have been considered on a sufficiency-of-the-evidence review because, if the evidence had been excluded at trial, the state might have introduced other evidence or otherwise employed different tactics to avoid dismissal. *Id.* We cited *Dullard* with approval in *Stenzel*, 827 N.W.2d at 701–02. Other cases follow an approach similar to *Dullard. See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S. Ct. 665, 672 (2010); *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). *But see State v. Maldonado*, 121 P.3d 901, 910 & n.13 (Haw. 2005) (holding under double jeopardy provision of Hawaii Constitution, court on appeal only considers properly admitted evidence at trial in sufficiency review); *Rushing v. Commonwealth*, 726 S.E.2d 333, 339 & n.4 (Va. 2012) (considering only properly admitted evidence in sufficiency review as a result of Virginia statute, appellate procedure, and rules of evidence).

Here, however, the procedural posture is materially different than that in *Dullard.* Unlike in *Dullard,* the district court in this case did not admit the evidence without qualification at trial. Instead, the district court admitted the evidence subject to Tripp's objection. At trial, then, the district court did not rule "it's in" but instead ruled "maybe it's in." Thus, the State was on notice that it was at risk on the question of admission of the evidence. The State then elected to rest its case without offering further evidence. The State could not reasonably rely on the district court admission of evidence because it was subject to the objection raised by Tripp.

Further, as noted by a New Jersey court, the rationale for remanding a substantial evidence case where evidence is stricken on appeal is that "the State may have additional evidence that it did not

produce in reliance upon the strength of the erroneously admitted evidence." *State v. Baker*, 549 A.2d 62, 66 (N.J. Super. Ct. App. Div. 1988). But the State could not have reasonably relied on the strength of the evidence offered in this case. The State had no reasonable basis to believe that the complaint in Exhibit 7, which detailed an alleged sexual offense, would be admissible over Tripp's hearsay objection on the question of whether the State proved a recent overt act under Iowa Code section 229A.4(2). *See* Iowa R. Evid. 5.801(*c*); *State v. Tompkins*, 859 N.W.2d 631, 642 (Iowa 2015) (explaining details of a criminal complaint are inadmissible to show the truth of the matter asserted); *State v. Doughty*, 359 N.W.2d 439, 442 (Iowa 1984) (same). The State may have had a colorable claim that the evidence could be considered by an expert in making a determination of dangerousness if it had sufficient indicia or reliability under Iowa Rule of Evidence 5.703, but even if the evidence could be relied upon by an expert in forming an opinion it is plainly not admissible for any other purpose. *See State v. Neiderbach*, 837 N.W.2d 180, 205 (Iowa 2013) ("[R]ule 5.703 is intended to give experts appropriate latitude to conduct their work, not to enable parties to shoehorn otherwise inadmissible evidence into the case." (quoting *Stenzel*, 827 N.W.2d at 705)); *Gacke*, 684 N.W.2d at 183 ("[E]vidence admitted under this rule is admitted for the limited purpose of showing the basis for the expert witnesses' opinions; it is not admissible as substantive evidence of the matters asserted therein.").

In addition, the State did not list the victim or any other person as a witness of an overt act prior to trial. In fact, the pretrial disclosures reveal that the State did not have any direct, nonhearsay evidence of an overt act. This clearly was not a case in which the State declined to offer additional available evidence as cumulative in reliance on the district

court ruling.[1] The State points to no admissible evidence of a recent overt act disclosed pretrial to the opposing party that it reasonably decided not to offer in order to avoid offering cumulative evidence.

In short, the State did not rely on the unqualified admission of evidence by the district court during trial. It offered what it had on the recent overt act—inadmissible hearsay evidence. The State further assumed the risk that the evidence posttrial might be found to be inadmissible, either by the district court, or this court on appeal. It had no reasonable basis for assuming that the hearsay evidence would be found admissible to prove an overt act after it rested. As a result, *Dullard* does not apply here.

We now turn to analysis of what has been shown by the two exhibits that were admitted into the record without objection. While the department of corrections report asserts that charging documents are attached, there were no such documents attached to the exhibit. The report simply asserted that a charge of assault with intent to commit sexual abuse was filed and sought revocation of parole. This document shows the charge was brought, but nothing more.

The findings of fact and conclusions of law of the administrative parole judge on the revocation of Tripp's release under Iowa Code chapter 903B are also threadbare. The administrative parole judge simply incorporated the findings of fact in the report. But, the report offered into evidence only presents the fact that Tripp had been charged with a crime. Nowhere in the two documents is there a discussion of the nature

---

[1]Exhibits 6A and 6B—discs recording the proceedings of the administrative parole hearing—were not offered by the State at trial. These exhibits, however, do not contain any admissible, nonhearsay evidence showing a recent overt act. While the deposition of the victim was apparently made part of the record of the parole revocation proceeding, the deposition is not part of Exhibits 6A and 6B.

of the allegations against Tripp, the nature of the evidence of the violation, or a reasoned evaluation of the evidence. While the State offered discs containing the evidentiary record presented to the administrative parole judge in the pretrial hearing, the district court clearly instructed the State that if the evidence was to be used for any other purpose than the motion in limine, the State would need to be offered the exhibits at trial. The State made no such offer on the discs.

The question, then, is whether this limited documentary evidence of actions taken by state actors, with conclusions but virtually no facts, provides substantial evidence to allow a reasonable finder of fact to conclude that Tripp committed a recent overt act beyond a reasonable doubt as required in SVP proceedings. *See* Iowa Code § 229A.7(5)(*a*).

The State certainly proved that the department of corrections had prepared a report stating a criminal complaint against Tripp had been filed and seeking revocation of his release under Iowa Code chapter 903B. The State also proved that an administrative parole judge, after a hearing, determined by a preponderance of the evidence that a violation of law occurred. But does this bare record, without more, provide a basis for the district court to make a determination, beyond a reasonable doubt, that a recent overt act occurred?

We think not. No evidence admitted at trial directly related to a recent overt act. The district court had no way at trial of making an independent determination of what the acts were, whether the alleged acts occurred, whether they were recent, whether they were overt, whether they were sexual in nature, whether the witnesses were credible, whether there was a misidentification, or whether the evidence cumulatively on the question of recent overt act was thick or thin. There was simply no principled basis for the district court to conclude on the

record presented at trial that the State proved beyond a reasonable doubt that Tripp engaged in a recent overt act. As a result, the recent-overt-act prong does not provide an alternate basis to uphold Tripp's SVP commitment.

**IV. Conclusion.**

For the above reasons, the judgment of the district court is reversed and the matter remanded to the district court for dismissal.

**REVERSED AND REMANDED.**

All justices concur except Mansfield, Waterman, and Zager, JJ., who concur in part and dissent in part.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. The majority correctly determines that Ronald Tripp was not "presently confined" for a sexually violent offense at the time the State filed its sexually violent predator (SVP) petition. However, there is substantial evidence that Tripp committed a "recent overt act"—namely, the attempted sexual abuse of a woman in 2013. This was the State's alternative ground for SVP commitment of Tripp. The district court failed to make a finding here only because it didn't think it had to. Accordingly, I would remand for a trial on this alternative ground. I find the majority's refusal to order a remand very troubling. Among other things, the majority contravenes an established line of authority holding that in weighing the sufficiency of evidence, we consider *all* admitted evidence, including evidence that may have been admitted erroneously. *See, e.g.*, *In re Det. of Stenzel*, 827 N.W.2d 690, 701 (Iowa 2013).

To recap, Tripp had been convicted of indecent contact with a child in July 2010. However, since then he had been released into the community. The release was not successful. In June 2011, the fifty-nine-year-old Tripp was charged with a probation violation for offering to pay young teenage girls $10 each to strip naked and jump from a bridge into a pond where children swam on a regular basis. Tripp also showed the girls his underwear and asked for a hug. Tripp's GPS monitor indicated he had been at the pond three consecutive days. Tripp admitted the violation and was incarcerated. Following a subsequent release, Tripp was charged in May 2013 with assault with intent to commit sexual abuse after he repeatedly groped a woman who was giving him a ride. The State decided to dismiss the charge and instead revoke

Tripp's parole. Revocation was granted and Tripp was reincarcerated. While in prison Tripp failed sex offender treatment (SOTP).

Because Tripp was not criminally convicted on the 2013 charge, and had intermittent periods of freedom following the 2010 conviction, I agree the State was obligated to prove a recent overt act in order to commit him under chapter 229A. *See In re Det. of Wygle*, ___ N.W.2d ___, ___ (Iowa 2018) (Mansfield, J., dissenting).

The State took steps toward meeting that burden at the SVP trial by alleging and attempting to prove the 2013 incident was a recent overt act. *See* Iowa Code § 229A.2(8) (2016) (defining a recent overt act as "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm"). With respect to that incident, the district court stated,

> Evidence presented at the parole revocation hearing disclosed that Tripp fondled an adult female acquaintance who was traveling with him in his vehicle when he offered to give her a ride. Tripp touched her breast and thighs, and tried to touch her vagina despite multiple attempts to block the assault. His parole was revoked and he was returned to prison. . . . The state relies on these events as establishing a recent overt act.

The majority correctly notes that the district court did not actually *find* that the 2013 groping was a recent overt act. It didn't have to, because it ruled that Tripp was presently confined within the meaning of Iowa Code section 229A.4(1). But if there is no present confinement under the statute then it becomes necessary to determine whether a recent overt act occurred, *see* Iowa Code § 229A.4(2)(*a*), and I would remand for that purpose.

I strongly disagree with the majority's view that we must reverse without a remand because the State failed to present substantial evidence at the SVP trial of an overt act. The State carried its burden

with three exhibits. Exhibit 5, the parole violation report from May 2013 that charged an assault with intent to commit sexual abuse, was admitted into evidence. So was Exhibit 8, the board of parole's order determining that all facts in the parole violation report were correct and revoking Tripp's parole. Also admitted into evidence was Exhibit 7, which consisted of the criminal complaint and the trial information that contained further details on Tripp's groping of the woman. At the SVP trial, Exhibit 7 was "admitted subject to the ruling on the motions taken under advisement." The court later denied those motions, and so we must presume Exhibit 7 was admitted. Furthermore, Tripp made no effort at trial to present an alternate version of the 2013 incident.

Notably, Exhibits 5 and 8—whose admissibility is conceded by the majority—amounted to substantial evidence of a recent overt act by themselves. Exhibit 5, the parole violation report, states that Tripp "was arrested on 5-13-2013 and charged with Assault with Intent to Commit Sexual Abuse (please see copy of attached complaint)." The complaint is actually part of Exhibit 7 and describes the victim's account of the incident in some detail. Exhibit 8 is the parole revocation order. It provides, "The facts contained in the Parole Violation Report are correct . . . ." Those documents collectively are enough to establish a recent overt act without any hearsay problems.

For all these reasons, substantial evidence would have supported a finding beyond a reasonable doubt that a recent overt act had occurred.

Unfortunately, the majority has decided to rewrite our law governing sufficiency of evidence reviews. Until now, that law was clear: "In conducting our sufficiency review, we must consider all evidence admitted during trial, including evidence that may have been admitted erroneously." *Stenzel*, 827 N.W.2d at 701; *accord State v. Dullard*, 668

N.W.2d 585, 597 (Iowa 2003); *State v. Burgdorf*, 861 N.W.2d 273, 278 (Iowa Ct. App. 2014). Thus, even if Exhibit 7 should not have been admitted, it may be considered as part of the sufficiency review.

The majority now changes this rule. Henceforth, if the trial court has not ruled on the admissibility of the evidence before the State has rested its case, and later admits it, the State may not rely on the evidence for sufficiency review if the appellate court finds it should not have been admitted. The majority reasons that where the district court has not admitted the evidence before the State rests, the State is on notice that it may need more evidence.

I would not water down our previously clear precedent. The majority's approach will lead to confusion and complication in bench trials, where the court typically reserves ruling on evidentiary objections. The majority cites no precedent from any jurisdiction for applying its approach in a *civil* case, such as an SVP proceeding. Notably, double jeopardy isn't an issue in SVP proceedings. *See In re Det. of Bradford*, 712 N.W.2d 144, 151 (Iowa 2006); *In re Det. of Garren*, 620 N.W.2d 275, 283–84 (Iowa 2000). Thus, the State could have brought successive SVP actions against Tripp based on the "presently confined" theory and, if necessary, the "recent overt act" theory.

I agree with the court that SVP laws can raise serious due process concerns, but the issue of whether Tripp can be retried has nothing to do with due process. If in fact Tripp recently attempted to rape a woman, then this fact—coupled with Tripp's prior sex offenses and his failure to complete sex offender treatment—may well warrant his continued confinement under chapter 229A. The fact finder should have an opportunity to decide the issue. I would not deny this opportunity by casting about for novel concepts of litigation fault-finding.

For all these reasons, I concur in part and dissent in part.

Waterman and Zager, JJ., join this concurrence in part and dissent in part.